**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TERRENCE P. FERGUS,** | ) | **CASE NO.1:14CV900** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| vs. | ) | |
| | ) | |
| **CAPITOL STRATEGIES GROUP,** | ) | **OPINION AND ORDER** |
| **INC. ET AL.,** | ) | |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter comes before the Court on Defendant Capital Strategies Group, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12 (b)(2). For the following reasons, the Court denies Defendant's Motion to Dismiss.

**I. Facts**

Plaintiff Terrence Fergus ("Fergus") alleges that in 2007, he entered into an oral agreement with Defendants Capital Strategies Partners LP ("CSP") and Defendant Capital Strategies Group, Inc. ("CSG"). Fergus alleges that CSG and CSP did business with Fergus as one entity, and refers to CSP and CSG collectively as "Capital Strategies." Fergus asserts

that he obtained an insurance policy for Regions Financial Insurance Corporation ("Regions") from MetLife, Inc. ("MetLife") using Capital Strategies as an agent. (Fergus Aff. ¶ 7). Fergus asserts that MetLife paid Capital Strategies commissions under the insurance contract. (Fergus Aff. ¶ 8). Fergus asserts that he facilitated, coordinated and serviced the insurance policy from MetLife to Regions through Capital Strategies, and that Capital Strategies agreed to pay Fergus a consulting fee of 50% of its commissions as compensation. (Fergus Aff. ¶ 9).

Fergus alleges that on January 1, 2010, he executed a written Commission Sharing Agreement with Capital Strategies, memorializing the terms of the oral agreement. Fergus alleges that the agreement between Fergus and CSG remained oral, or in the alternative, that both Defendants were bound by the written agreement under an "alter-ego" theory in which CSG and CSP "are either the same entity, are related entities with common ownership, are principal and agent or the alter egos of one another" such that the corporate veil of either CSP or CGS may be pierced, subjecting both parties to liability.

Fergus alleges that from 2008 to 2013, Defendants paid him under those agreements and that in January 2014, the Defendants denied the existence of an agreement and refused to pay him. The written agreement attached to the Complaint was executed by Fergus and Capital Strategies Partners, L.P. and contained a forum selection clause under which any proceeding arising out of or relating to the agreement would be brought in Cuyahoga County, Ohio. On March 18, 2014, Fergus brought suit against CSP and CSG in the Court of Common Pleas of Cuyahoga County, Ohio in which he **(I)** alleged Breach of Contract, (Compl. at ¶¶ 19-26); **(II)** requested Declaratory Relief (Compl. at a ¶¶ 27-31); **(III)** alleged Promissory Estoppel (Compl. at ¶¶ 32-37); and **(IV)** alleged Quantum Meruit. On

April 25, 2014, CSG filed a notice of removal to this Court on the basis of complete diversity of citizenship under 28 U.S.C. § 1332 (c). Fergus is a resident and citizen of Cuyahoga County, Ohio. CSG is an Alabama corporation with its principal place of business in Alabama. CSG filed its Motion to Dismiss for Lack of Personal Jurisdiction. CSG argues that it should not be subject to personal jurisdiction in Ohio and that it would be derived of due process of law in violation of the Fourteenth Amendment of the United States Constitution if it is subject to jurisdiction in Ohio.

## II. Law and Analysis

**A. Legal Standard**

When a court approaches a motion to dismiss for lack of personal jurisdiction based solely on written materials and affidavits, "the burden on the plaintiff is relatively slight, [...] and the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal [ ] [...]." *Ampco System Parking v. Imperial Parking Canada Corp.*, No. 1:11CV1172, 2012WL1066784, at *2 (N.D. Ohio Mar. 28, 2012) (quoting *Air Prods. & Controls, Inc., v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). The court "does not weigh the controverting assertions of the party seeking dismissal." *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). Plaintiff need only establish jurisdictional claims with "reasonable particularity" and the pleadings and affidavits are construed in the light most favorable to plaintiff. *Ampco*, 2012WL1066784, at *2. The burden is on the plaintiff, however, to establish that jurisdiction exists, and the plaintiff may not merely stand on his pleadings in the face of a properly supported motion for dismissal. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The plaintiff must set forth

specific facts showing that the court has jurisdiction. *Id.* Therefore, dismissal is proper only if all the specific facts which the plaintiff alleges collectively fail to state a prima facie case for jurisdiction. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

**B. Personal Jurisdiction**

To determine whether personal jurisdiction may be exercised, this Court applies Ohio law and uses a two step analysis. *Sterling Jewelers, Inc. v. M & G Jewelers, Inc.*, No. 5:14CV2030, 2015 WL 545778, at *1 (N.D. Ohio Feb. 10, 2015). First the Court determines whether Ohio's long arm statute confers personal jurisdiction. *Id.* If the Court determines that the long-arm statute confers personal jurisdiction, it then determines whether exercising jurisdiction over the Defendant would deprive the Defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution. *Id.*

**1. Ohio's Long Arm Statute**

Fergus asserts that jurisdiction over CSG is proper in Ohio because CSG satisfies sections (A)(1) through (4) of Ohio's long-arm statute. He claims that "the only reason that CSG was introduced to Regions, servicing their insurance policy and receiving substantial commissions from MetLife is because it transacted business with [him] in Ohio." (Fergus Aff. ¶20). In his Memorandum in Opposition to CSG's Motion to Dismiss, Fergus' argument only addresses whether CSG transacted business in Ohio, and therefore the Court only addresses that argument. The pertinent part of the long-arm statute provides:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state....

R.C. § 2307.382(A).

Courts do not apply a generalized test when determining whether a defendant transacted business in Ohio pursuant to R.C. § 2307.382(A)(1), but make determinations on a case by case basis. *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 236 (1994); *see also Joffe v. Cable Tech, Inc.*, 163 Ohio App. 3d 479, 488 (2005). The Ohio Supreme Court has held that to 'transact business' is "to prosecute negotiations; to carry on business; [or] to have dealings." *Faurecia Exhaust Sys., Inc. v. Walker*, 464 F. Supp. 2d 700, 705-06 (N.D. Ohio 2006) citing *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73, 75 (1990).

Two factors help determine whether an out of state defendant has transacted business in Ohio. *McMunigal v. Bloch*, No. 1:09CV01674, 2010 WL 2106186, at *3 (N.D. Ohio May 25, 2010). The first factor is "whether the out of state defendant initiated the dealing." *Id.* If the defendant reached out to Ohio to create a business relationship, then the defendant has transacted business in Ohio. *Id.* Under the second factor, the Court will ask "whether the parties conducted their negotiations or discussions in the forum state or with terms affecting the forum state." *Id.* See also *R.D. Marks Consulting, Inc. v. Astra Holdings, LP*, No. 5:08CV2862, 2009 WL 1362972, at *4 (N.D. Ohio May 14, 2009) (holding that "courts must consider, which jurisdiction the parties undertook their discussions and communications, and on what terms, as well as whether the foreign corporation submitted payments to an Ohio-based plaintiff").

As to whether CSG initiated the dealing with Fergus, Fergus claims that he reached out to Capital Strategies and that he was connected with David Byers of CSG. (Fergus Aff. ¶ 6). Fergus also claims that he facilitated, coordinated and serviced the insurance policy from

MetLife to Regions, through Capital Strategies, which then resulted in Capital Strategies agreeing to pay Fergus a consulting fee of 50% of their commission. (Fergus Aff. ¶ 9). Because Fergus himself alleges that he initiated the dealing between himself and Capital Strategies (which includes CSG as Fergus refers to them collectively), and because he has not offered other evidence that CSG initiated negotiations, Fergus has not shown that CSG initiated the dealing and has not satisfied the first factor.

As to whether the parties conducted their negotiations or discussions in Ohio or agreed to terms affecting Ohio, Fergus asserts that Byers attended a meeting in Ohio concerning the Regions policy as well as other matters. (Fergus Aff. ¶ 15). Byers counters this and asserts that none of CSG's employees or agents ever engaged in any negotiations in connection with the purported commission sharing agreement. (Byers Decl. ¶ 8). Byers asserts that he traveled to Ohio on behalf of CSG on four occasions over the last decade, but that he met with Fergus in Ohio on only one occasion. (Byers Decl. ¶ ¶ 14, 15). Byers states that at that meeting he and Fergus discussed potential insurance opportunities surrounding Fergus' initiation of a multi-family office, and that the discussion had no relation to a commission sharing agreement. Byers Decl. ¶ 15).

The parties also dispute whether they ever entered into a commissions sharing agreement. Fergus alleges that he and the Defendants entered into and oral commission agreement in 2007. (Compl. ¶10). In his Complaint, Fergus alleges that the agreement between Fergus and CSG remained oral, or in the alternative, that both Defendants were bound by the written agreement under an "alter-ego" theory. (Compl. ¶¶ 10-13). The Commission Sharing Agreement, which Fergus attached to his Complaint, was signed by

6

Fergus and Patrick Trammel, partner at Capital Strategies Partners, LP. CSG counters with Byers' declaration and asserts that CSG has never entered into any agreement with Fergus, whether written or oral, pertaining to the payment of commissions (Byers Decl. ¶ 9). Because the Court must view the allegations in the pleadings and documentary evidence in the light most favorable to the non-moving party and resolve all reasonable competing inferences in favor of the non-moving party, the Court construes Fergus' averments as true and assumes for purposes of determining CSG's Motion to Dismiss that the parties conducted their negotiations or discussions in Ohio and that CSG entered into an oral commissions agreement. *Ampco*, 2012WL1066784, at *2.

Fergus also claims that CSG transacted business in Ohio because it corresponded with Fergus. Fergus asserts that "over the years [he] was doing business with Capital Strategies, [he] had numerous phone calls and correspondence while [he] was in Ohio." (Fergus Aff. ¶ 15). Fergus does not specify if CSG directed communications to Fergus. Furthermore, this Court has held that "merely directing communications to an Ohio resident for the purposes of negotiating an agreement, without more, is insufficient to constitute 'transacting business' within Ohio." *McMunigal*, 2010 WL 2106186, at *4. citing *Shaker Const. Grp., LLC v. Schilling*, No. 1:08CV278, 2008 WL 4346777, at *3 (S.D. Ohio Sept. 18, 2008). In addition, there must be "some continuing obligation that connects the non-resident defendant to the state or some terms of the agreement that affect the state." *Shaker Const. Grp., LLC*, 2008 WL 4346777, at *2 (S.D. Ohio Sept. 18, 2008).

Fergus asserts that all money owed to him under the commissions sharing agreement with Capital Strategies was due payable to him in Ohio, and that from 2007 to 2013, CSG

7

made commissions payments to Fergus' broker dealer in Beachwood, Ohio. (Fergus Aff. ¶ ¶ 18, 19).  Fergus asserts that CSG and CSP initially made combined commissions payments, and that beginning in January 2011, after he entered into the written commission agreement with Capital Strategies, he received separate payments from CSP and CSG. (Fergus Aff. ¶¶ 14, 19).  His affidavit includes a breakdown of payments made from 2008 and 2013 which shows that three payments were made by CSP and CSG in combination, and that CSG made four payments individually before its payments were terminated.  (Fergus Aff. ¶ 19).

Byers asserts that before 2011, CSG and Capital Strategies Partners [Inc] shared the same broker-dealer who made the commission payments to Fergus in error. (Byers Supplemental Decl. ¶ 19).  He further asserts that the transaction from which the subject commissions payments were made involved an Alabama based bank and that any relevant activity of CSG was in the pursuit of business with that bank and not with an Ohio entity or individual. (Byers Decl. ¶ ¶ 12,13).  Construing the evidence in Fergus' favor, the Court finds that CSG had a continuing obligation connecting CSG to Fergus in Ohio.  Because the parties conducted negotiations or discussions in the state and agreed on terms obligating CSG to Fergus in Ohio, the Court finds that Ohio's long-arm statute confers personal jurisdiction.

When personal jurisdiction over an out of state defendant is based only on the long arm statute, only a cause of action arising from acts enumerated in the statute may be asserted against the defendant.  R.C. § 2307.382(C)**.**  Fergus' cause of action for the breach of the commissions agreement claim arose from CSG's actions in transacting business in Ohio.

**2. Due Process**

The Court must also determine whether exercising jurisdiction over CSG would deprive CSG of the right to due process of law pursuant to the Fourteenth Amendment. *Sterling*, 2015 WL 545778, at *1. In order for personal jurisdiction to comply with due process, Defendants must have "minimum contacts" with the forum state "so that the maintenance of the action does not offend 'traditional notions of fair play and substantial justice.'" *Citizens Bank v. Parnes*, 376 F. App'x 496, 502 (6th Cir. 2010). An out of state defendant has minimum contacts "where [its ]conduct and connection with the forum state are such that he would reasonably anticipate being haled into court there." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

There are two categories of personal jurisdiction: general jurisdiction and specific jurisdiction. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). In the corporate context, general jurisdiction is proper where the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render [it] essentially at home in the forum state." *Allstate Ins. Co. v. Electrolux Home Products, Inc.*, No. 1:14 CV 329, 2014 WL 3615382, at *4 (N.D. Ohio July 18, 2014), citing *Daimler*, 134 S. Ct. at 751. Ohio law does not recognize general jurisdiction over non-resident defendants, and instead requires that the court finds specific jurisdiction under Ohio's long- arm statute. *Ohio Edison Co. v. Frontier N. Inc.*, No. 5:14CV321, 2014 WL 6389564, at *4 (N.D. Ohio Nov. 14, 2014).

Specific jurisdiction exists and exposes the defendant to suit in the forum state where the defendants contacts with the forum give rise to the claim. *Daimler*, 134 S. Ct. at 754. Ohio's long-arm statute only contemplates specific jurisdiction. *Hitachi Med. Sys. Am., Inc. v. St. Louis Gynecology & Oncology, LLC*, No. 5:09-CV-2613, 2011 WL 711568, at *4 (N.D.

Ohio Feb. 22, 2011).

The Sixth Circuit has articulated a three-part test for determining whether the exercise of specific personal jurisdiction comports with due process:

> First, the defendant must purposely avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Kerry Steel*, 106 F.3d at 150 (quoting *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

**a. CSG purposefully availed itself of the privilege of doing business in Ohio**

To be subject to personal jurisdiction, the defendant must "purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  Importantly, the plaintiff's unilateral activity will not satisfy the required contact between the defendant's and the state  *Hanson*, 357 U.S. at 253.  The act of entering into a contract with an in state plaintiff alone does not establish minimum contacts, but the presence of other factors in addition to the contract such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" will constitute purposeful availment." *Air Products & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 551 (6th Cir. 2007).  The Supreme Court has held that "[w]here the defendant deliberately has  engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting

business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985).

As discussed above, the Plaintiff's evidence has established that CSG entered into the commission sharing agreement with Fergus, an Ohio resident. While this act alone is not sufficient to constitute minimum contacts, the Court should consider CSG's prior negotiations, contemplated future consequences, the terms of the contract and the parties' actual course of dealing. *Air Products*, 503 F.3d at 551. The Plaintiff's evidence has also established that CSG engaged in discussions regarding the agreement with Fergus while in Ohio, that the terms of the commissions agreement contemplated that CSG would make payments to Fergus, and that CSG made payments to Fergus in Ohio over the course of several years. Because CSG created continuing obligations between itself and Fergus by entering into the commissions sharing agreement, it has manifestly availed itself of the privilege of conducting business in Ohio, and the Court holds that it is presumptively not unreasonable to require CSG to submit to the burdens of litigation in Ohio. *Burger King Corp.*, 471 U.S. at 475-76.

The Court also notes that the Southern District has held that "the purposeful availment prong of the constitutional analysis is coextensive with the 'transacting business' prong of Ohio's long-arm statute" and that if the 'transacting business' prong confers personal jurisdiction over an out of state defendant, exercising personal jurisdiction over that defendant will not offend the 'purposeful availment' prong of the constitutional analysis. *Dayton*

11

*Superior Corp. v. Yan*, 288 F.R.D. 151, 168 (S.D. Ohio 2012). The Court finds that CSG purposefully availed itself of the privilege of doing business in Ohio.

**b. Fergus' causes of action arise from CSG's activities in Ohio**

As to whether a cause of action arises from the Defendant's activities in the forum state, the Sixth Circuit has held that "[i]f a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996). If the cause of action is for a non-resident defendant's breach of contract with an Ohio resident, then the cause of action arises from the out of state defendant's activities in Ohio. *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998). In his Complaint, Fergus alleges that his claims center on the Defendant's breach of the commissions agreement. (Fergus Compl.¶ 1) Because Fergus' causes of action are for CSG's alleged breach of contract and for related claims, the Court finds that Fergus' causes of action arose from CSG's activities in Ohio.

**c. Personal jurisdiction over CSG is reasonable**

Fergus argues that since he has met the first two *Southern Machine* factors, there is a presumption that the exercise of personal jurisdiction over CSG is reasonable. The Sixth Circuit has held that if it finds that the defendant purposefully availed himself of the forum and that the cause of action arose from the defendant's contacts, it will presume that specific assertion of personal jurisdiction is proper. *Cole*, 133 F.3d at 436. See also *First Nat. Bank of Louisville v. J. W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir. 1982) (holding that "[w]hen the first two elements are met, an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion."). Because the Court has

found that CSG purposefully availed itself of the forum and that the cause of action arose from CSG's contacts, the Court presumes that personal jurisdiction over CSG is proper. Because the three *Southern Machine* criteria are met, the Court finds that the exercise of personal jurisdiction over CSG would comport with due process.

### III. Conclusion

This case is truly a "close call" and the facts as such cut both ways.  However, when considering the equities involved, the Court finds the continuing obligations, evidenced by Defendants payments to Plaintiff over the course of several years, ultimately result in the Court's personal jurisdiction over Defendant.  Because Ohio's long-arm statute confers personal jurisdiction over CSG and exercising jurisdiction over CSG comports with due process, personal jurisdiction over CSG is proper and the Court denies Defendant's Motion to Dismiss.

IT IS SO ORDERED.

        s/ Christopher A. Boyko
        CHRISTOPHER A. BOYKO
        United States District Judge

Dated: March 13, 2015